IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LENDER L. HUNTER                          :

                                          :

        v.                                :   Civil Action No. DKC 07-2655

                                          :

TOM VILSACK[1]                            :

                                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Tom Vilsack, Secretary of the United States Department of Agriculture. (Paper 54). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I.   Background**

**A.   Discrimination in the Workplace**

The following facts are alleged by Plaintiff. Plaintiff Lender L. Hunter, an African-American female, was employed by the United States Department of Agriculture ("the Agency") at

---

[1] Plaintiff originally filed this action against Michael Johanns, the former Secretary of Agriculture. Tom Vilsack, Mr. Johanns' successor, is substituted as the proper defendant pursuant to Fed.R.Civ.P. 25(d).

the Maryland Farm Services Agency ("FSA"). She began her employment at FSA on July 1, 2001, as a GS-12 Administrative Officer, but was promoted in 2003 to the GS-13 position of Executive Officer.

Plaintiff contends that she experienced discriminatory treatment and retaliation from her direct supervisor, Maryland State Executive Director Elizabeth Anderson, following their joint participation in an employment interview panel in September 2004. After a telephone conference with one candidate, who Ms. Anderson assumed was Asian-American, she suggested that the candidate would be well-suited for a position on the Eastern Shore of Maryland where there was a large Asian-American population. Another member of the interview panel, EEO Observer Sam Snyder, objected to this comment, advising Ms. Anderson that the candidate's ethnicity was not an appropriate factor to be considered in the hiring process. Plaintiff concurred with Mr. Snyder's assessment, adding that Ms. Anderson should avoid making comments that could be perceived as discriminatory in the future.

During the same interview process, Plaintiff observed that two other panel members – Tom Long and George Young – were attempting to manipulate their scores in an effort to influence the hiring of a particular candidate. When Plaintiff confronted them and requested that they turn over their notes, Mr. Long

2

refused to comply and became belligerent toward Plaintiff. Plaintiff reported this conduct to Ms. Anderson, advising her supervisor that she considered Mr. Long's reaction to constitute racial and sexual harassment. Ms. Anderson subsequently issued disciplinary letters to both Mr. Long and Mr. Young, but did not collect Mr. Long's notes.

After the interview panel adjourned, Plaintiff witnessed a tense discussion between Ms. Anderson and Mr. Snyder. Ms. Anderson believed that Mr. Snyder had threatened her and sought Plaintiff's support as a witness. Plaintiff told her supervisor that Mr. Snyder had not threatened her, but rather that he threatened to file a lawsuit against Mr. Long. Mr. Snyder subsequently filed an EEO complaint against Ms. Anderson, however, alleging sex discrimination, retaliation, and harassment. Plaintiff participated in that investigation in February 2005, providing a sworn statement in support of Mr. Snyder.

Following the interview panel, Plaintiff observed that Ms. Anderson began excluding her from emails and office meetings and would no longer communicate with her other than by leaving notes on Plaintiff's desk after she had left the office for the day. On April 27, 2005, Ms. Anderson called Plaintiff into a meeting with FSA State Chairman Charles Feaga and accused her of being rude and condescending toward employees in other offices.

3

During this same meeting, Ms. Anderson also referenced a prior incident between Plaintiff and Mr. Young, in which Plaintiff greatly upset her colleague, stating that Mr. Young "didn't want to hear that comment coming from a woman." (Paper 59, at 11). On May 31, 2005, Plaintiff received an unfavorable mid-year performance evaluation from Ms. Anderson, which made reference to these and similar incidents. Ms. Anderson did not propose to discipline Plaintiff for this conduct, nor did she recommend that Plaintiff be placed on a performance improvement plan or counseling.

On August 8, 2005, Ms. Anderson issued a notice to Plaintiff proposing to suspend her for thirty days for alleged negligence in her duties and failure to follow supervisory instructions, listing eight specific examples. Ms. Anderson advised Plaintiff to direct future communication regarding the proposed suspension to John Chott, the Assistant Deputy Administrator for Field Operations in the national office in Washington, D.C. On September 1, 2005, Plaintiff sent a written reply to Mr. Chott, responding to Ms. Anderson's allegations and asking Mr. Chott not to suspend her. She submitted a second letter to Mr. Chott on October 4, 2005, complaining about "the continuous[ly] stressful[] working environment created by Ms. Anderson." (Paper 59, at 12). On October 11, 2005, Mr. Chott informed Plaintiff that he concurred with Ms. Anderson's

proposal to suspend her for thirty days, offering to permit Plaintiff to resign her position in lieu of accepting the suspension.  Plaintiff refused to resign and took issue with Mr. Chott's "extremely drastic and pejorative" decision.  (*Id.* at 13).  By letter dated October 20, 2005, Mr. Chott informed Plaintiff of his decision to suspend her for thirty days – from October 22 to November 21, 2005 – and advised her of the right to appeal the suspension to either the Merit Systems Protection Board ("MSPB") or to the Agency's Equal Employment Opportunity ("EEO") office.   (Paper 54, Ex. 24, Att. 13).

### B.   Plaintiff's EEO Complaint

The following facts concerning Plaintiff's filing of a discrimination complaint with the EEO are either uncontroverted or construed in a light most favorable to Plaintiff. Plaintiff's first informal contact with an EEO counselor occurred on or about May 10, 2005.  On September 26, 2005, following a series of additional contacts, Plaintiff's EEO counselor conducted a final interview with her.  A notice of right to file a formal EEO complaint was issued two days later, and Plaintiff filed her formal EEO complaint on October 12, 2005, alleging "[h]arassment, [h]ostile work environment (non-sexual) and disparate treatment" on the bases of "[r]ace, [c]olor, and [g]ender." (Paper 54, Ex. 2, EEO Report of

Investigation ("ROI"), Ex. 1 at 2).  Her complaint included the following statement:

> I am being discriminated against based on my race, color, and gender.  My supervisor [Ms. Anderson] harassed me before and during my military training, created a hostile work environment by allowing staff to send rude emails, and disparately treated me when she [resorted] to written and non-verbal communication.

(*Id.* at 3).  Plaintiff attached to her complaint a letter dated September 5, 2005, addressed to her EEO counselor, stating that "[o]n August 8, 2005, Ms. Anderson issued me a proposed suspension letter for a period of 30 days without pay," and describing specific instances of disparate treatment and hostile work environment.  (*Id.* at 4-5).

On October 24, 2005, following Mr. Chott's decision to suspend her, Plaintiff filed a supplemental EEO complaint under her existing case number naming Mr. Chott as the responding official, indicating "Reprisal" as the basis, and "Proposed Resignation" as the claim, reflecting an incident date of October 12, 2005.  (Paper 54, Ex. 15).  On November 1, 2005, however, Plaintiff advised the Agency's EEO office that she had "decided to appeal [the] suspension to the Merit Systems Protection Board ["MSPB"] [and] . . . [would] not be challenging the proposed disciplinary action in the EEO process."  (Paper 54, Ex. 16).  This letter further stated that Plaintiff was

"still pursuing all other issues stated in the above-referenced formal complaint" with the EEO. (*Id.*).

On December 7, 2005, Plaintiff was advised by the EEOC that the following issues had been accepted for review and referred for investigation:

> Whether from May 2005 to the present the agency subjected the complainant to harassment (non sexual) and discrimination (disparate treatment) based on race (Black), color (unspecified), and sex (female) when:
>
> (a) other employees have been provided staff support while her repeated requests for support have been denied;
>
> (b) she received negative comments on her mid-year performance evaluation;
>
> (c) her supervisor routinely requests information from her counterparts and not the complainant;
>
> (d) her supervisor withheld documents (FSA-875 form) from her;
>
> (e) in June 2005, her coworkers sent her rude emails and management failed to adequately address the matter;
>
> (f) in July 2005, her supervisor e-mailed her several times while she was away on military training;
>
> (g) her supervisor refuses to discuss work related information with her and instead she leaves notes on her desk or sends e-mails, the most recent event occurred August 9, 2005; and[]
>
> (h) her supervisor readily believes discrediting statements by her co-workers

>           and fails to take action once they are
>           disproved[.]

(ROI, Ex. 4 at 1-2).   This letter specifically acknowledged

receipt of Plaintiff's "letter requesting to withdraw the

incident of 'proposed disciplinary action' because [Plaintiff]

subsequently received a 30-day suspension and [was] pursuing

this matter with the Merit Systems Protection Board." (*Id*. at

1).   It further stated that "[t]he Department of Agriculture

(Department) is required under 29 U.S.C. § 1614.108 to complete

an impartial, factual and appropriate investigation of the

accepted claim within 180 days of the date the subject EEO

complaint was filed," but that "[t]he complainant and the

Department may voluntarily extend the 180-day time period not to

exceed an additional 90 days." (*Id*. at 2).

By letter dated April 3, 2006, the EEOC advised Plaintiff

that the 180-day time limit for completion of the investigation

was set to expire on April 11, but that additional time was

needed. (ROI, Ex. 22 at 3).   On April 4, 2006, Plaintiff signed

an agreement extending the investigative period for ninety days,

in accordance with 29 C.F.R. § 1614.108(e), until July 10, 2006.

(*Id*. at 2).   When the ninety-day period subsequently expired

without completion of the investigative report, the FSA Office

of Civil Rights issued a letter, dated July 18, 2006, notifying

Plaintiff of her "right to request a hearing with the U.S. Equal

Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate U.S. District Court." (ROI, Ex. 21). The Report of Investigation related to Plaintiff's EEO complaint was submitted on August 2, 2006, and the investigation concluded without a final determination. (ROI, at 3).

### C. Plaintiff's MSPB Appeal

On November 1, 2005, Plaintiff, proceeding *pro se*, filed an appeal of her suspension with the MSPB on the following ground:

> I was suspended for 30 calendar days because of race discrimination. I am African American, and the Agency's proposing and deciding officials are white. There is no valid basis for the 30 day suspension.

(Paper 54, Ex. 19). Plaintiff elected that the case be decided based upon the submissions of the parties, without a hearing. Thereafter, the parties submitted papers in support of their respective positions and a discovery process commenced. In a letter to the Administrative Law Judge ("ALJ") dated January 6, 2006, Plaintiff advised that she had "a related EEO Complaint pending at USDA, which predates my suspension and is not within the MSPB's jurisdiction," and alleged, for the first time, that her "suspension [was] the product of both EEO retaliation and a nasty form of race discrimination . . . at the Farm Service Agency." (Paper 54, Ex. 22 at 3). In a subsequent letter, dated January 13, which set forth the basis of her disparate treatment claim, Plaintiff concluded by stating: "Finally, I

9

want to make clear that my thirty-day suspension is the product of both discrimination and EEO retaliation." (Paper 54, Ex. 23 at 4).

On March 3, 2006, the ALJ issued an opinion affirming Plaintiff's suspension. In addition to finding that the Agency had met its burden with regard to each of the specified grounds, the ALJ also addressed Plaintiff's "affirmative defenses of retaliation for engaging in EEO activity and discrimination on the bases of race and gender." (Paper 54, Ex. 26 at *2). With regard to her EEO reprisal claim, the ALJ found:

> The appellant did not provide evidence that she engaged in any protected EEO activity before the date disciplinary action was proposed for the charges at issue in this appeal. The only evidence in the record concerning the appellant's EEO activity had to do with a complaint regarding the charges and disciplinary action that are the subject of this appeal. I find that the appellant thus did not show that this adverse action was taken against her in retaliation for her EEO activity, because the charges predated her EEO activity. In addition, the appellant did not explain or show how the deciding official was motivated by retaliation rather than her misconduct in imposing the 30-day suspension at issue in this case. She thus did not meet her burden of proving her affirmative defense of retaliation in this case.

(*Id*. at *10-11).

With regard to Plaintiff's race and gender discrimination claims, the ALJ determined that, with one exception, Plaintiff's

allegations in support of her disparate treatment claim were "uncorroborated by any documentary evidence." (*Id*. at *12). Moreover, the comparative employees named by Plaintiff – Linda Slacum, George Turner, Mr. Long, Mr. Young, and Mr. Chott – were not similarly-situated to Plaintiff. (*Id*. at *12-13). Accordingly, the ALJ concluded that Plaintiff failed to meet her burden of proving discrimination as well. (*Id*. at *14). The ALJ further advised Plaintiff of her right to file either "a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final" or an "appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5" within the same time period. (*Id*. at *19-20). The decision became final on April 7, 2006. (*Id*. at *17).

On or about April 5, 2006, Plaintiff submitted an affidavit in her still-pending EEO case, attempting to import her failed MSPB retaliation claim into the EEO investigation. (ROI, Ex. 8). This claim was not considered, however, as the investigator noted that "[t]he suspension issue has been appealed to the MSPB and is not an accepted issue in this case." (*Id*. at 14, n.2).

### D.   **Procedural Background of the Instant Action**

On May 5, 2006, Plaintiff filed a complaint in the United States District Court for the District of Columbia, alleging that (1) "Defendant unlawfully discriminated against [her] . . . on the basis of her race (African American) and sex (female) by

subjecting her to an adverse personnel action, i.e., a 30-day suspension, and a hostile work environment in violation of Title VII," and (2) "Defendant unlawfully retaliated against [her] . . . on the basis of her prior protected EEO activity by subjecting her to an adverse personnel action, i.e., a 30-day suspension, in violation of Title VII." (Paper 1, ¶¶ 35, 36).  On September 8, 2006, following receipt of her right-to-sue letter, Plaintiff filed an amended complaint raising identical claims (paper 7), which Defendant answered on September 27, 2006 (paper 9).  Upon Defendant's motion, the case was transferred to this court on October 2, 2007.  (Paper 22).  On May 15, 2009, following the close of discovery, Defendant filed the motion to dismiss or, in the alternative, for summary judgment that is presently before the court.  (Paper 54).

In her opposition papers, Plaintiff has conceded dismissal of her hostile work environment claim.  (Paper 59, at 55). Accordingly, that claim will be dismissed.  Plaintiff's papers additionally fail to advance any argument or present any evidence with respect to her claim that she suffered discrimination on the basis of her gender.[2]  Thus, Plaintiff's

_____

[2] Plaintiff essentially conceded that her complaint was based on racial, rather than gender, discrimination during her deposition.  When she was asked to "identify every action which you believe was evidence or a product of gender discrimination," Plaintiff responded, "Because [Ms. Anderson] would never - she

12

gender discrimination claim cannot prevail and will also be dismissed. *See* Fed.R.Civ.P. 56(e).   What remains, then, are Plaintiff's claims that her suspension was racially motivated and was retaliation for prior protected EEO activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII").

## II. Analysis

### A. Standards of Review

Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *See Onuoha v. Grafton School*, 182 F.Supp.2d 473, 481 (D.Md. 2002).   In a Rule 12(b)(1) motion, the court may look beyond the pleadings and "the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (citation omitted); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).   It is Plaintiff's

would always take the white employees' explanation over not even coming to me to even seek any explanation from me." When counsel clarified that this "was because they were white employees," Plaintiff answered, "Yes." (Paper 54, Ex. 6 at 96). The only conceivable basis for this claim is Ms. Anderson's statement that Mr. Young "didn't want to hear [a specific] comment coming from a woman." (Paper 59, at 11). That statement alone, however, is clearly insufficient to establish a gender discrimination claims.

burden to prove that jurisdiction in this court is proper. *See DeBauche v. Virginia Commonwealth Univ.*, 7 F.Supp.2d 718, 721 (E.D.Va. 1998). In this analysis, the court must construe the complaint "broadly and liberally," but "it is not bound to draw argumentative inferences in the plaintiff's favor." *Id*.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372 (2007); *Emmett*, 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential

element . . . necessarily renders all other facts immaterial."
*Id*.   Thus, on those issues on which the nonmoving party will
have the burden of proof, it is his or her responsibility to
confront the motion for summary judgment with an affidavit or
other similar evidence in order to show the existence of a
genuine issue for trial.  *See Anderson*, 477 U.S. at 254; *Celotex
Corp.*, 477 U.S. at 324.   "A mere scintilla of proof, however,
will not suffice to prevent summary judgment." *Peters v.
Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   There must be
"sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party." *Anderson*, 477 U.S. at 249.
"If the evidence is merely colorable, or is not significantly
probative, summary judgment may be granted." *Id*. at 249-50
(citations omitted).

###### B.   Analysis

###### 1.   Retaliation

On October 24, 2005, four days after her suspension became
final, Plaintiff attempted to supplement her previously filed
EEO complaint with a claim that Mr. Chott's offer to permit her
to resign in lieu of accepting a suspension constituted
retaliation.  (Paper 54, Ex. 15).  By a letter dated November 1,
2005, Plaintiff expressly withdrew all EEO claims related to her
suspension, stating that she had decided to pursue an appeal
with the MSPB instead.  (Paper 54, Ex. 16).  On the same date,

she filed an MSPB appeal claiming that her suspension was the result of racial discrimination, but made no mention of retaliation. (Paper 54, Ex. 19). Although she claimed in conclusory fashion in two letters to the ALJ during the MSPB discovery process that her suspension was "the product of both discrimination and EEO retaliation" (paper 54, ex. 23 at 4), Plaintiff presented no evidence of any predicate EEO activity before the MSPB, thus she could not prove her affirmative defense based on retaliation, as the ALJ found (paper 54, ex. 26 at *10-11). In this court, Plaintiff alleges that her suspension was the result of retaliation by both Mr. Chott and Ms. Anderson in response to her participation in various activities protected under Title VII. This claim, however, was neither investigated by the EEO nor presented to the MSPB; rather, it was split between these two bodies. A threshold question is presented, then, as to whether Plaintiff has exhausted her administrative remedies with respect to her retaliation claim.

Defendant contends that Plaintiff's claim of retaliation based on any activity occurring prior to October 12, 2005 — *i.e.*, the date Plaintiff filed her formal EEO complaint — must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for failure to exhaust administrative remedies. According to Defendant, Plaintiff was required to raise all known retaliation claims

arising prior to that date in her formal EEO complaint, and because neither her complaint nor the claims accepted for investigation included a claim of retaliation, the court is without subject matter jurisdiction to consider it at this juncture.   While Defendant concedes that Plaintiff "properly exhausted her MSPB Retaliation Complaint regarding the suspension itself" (paper 54, at 21), because Plaintiff presented no evidence of her participation in protected activity before the MSPB, that concession is of no real consequence.   In effect, Defendant argues that Plaintiff's retaliation claim must be dismissed for failure to exhaust administrative remedies.

Title VII makes it "an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such person's race, color, religion, sex, or national origin."   As the Fourth Circuit has stated, however:

> Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC.   *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).   The EEOC charge defines the scope of the plaintiff's right to institute a civil suit.   *Id*.   "An administrative charge of discrimination does not strictly limit a Title VII suit that may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be

> expected to follow the charge of
> discrimination." *Chisholm v. United States
> Postal Serv.*, 665 F.2d 482, 491 (4th Cir.
> 1981).

*Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 1981).

In *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009), the Fourth Circuit held that retaliatory acts that follow the filing of a formal EEOC complaint are reasonably related to the complaint and thus may be raised for the first time in district court. The same rule does not apply, however, where a plaintiff's claims of retaliation could have been raised in her EEOC charge, but were not. *See Cherry v. Bealefeld*, Civ. No. CCB-08-1228, 2010 WL 917421, *6-7 (D.Md. March 9, 2010) (citing *Riley v. Technical Mgmt. Servs. Corp.*, 872 F.Supp. 1454, 1460 (D.Md. 1995), and *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991)); *see also Allen v. Rumsfeld*, 273 F.Supp.2d 695, 704 (D.Md. 2003) ("a plaintiff must exhaust her administrative remedies in order to properly file a civil suit when the alleged retaliation could have been raised in the original EEOC complaint" (citing *Riley*, 972 F.Supp. at 1459-60)). This is so because:

> One of the primary reasons for allowing
> plaintiffs to allege retaliation for the
> first time in court is that plaintiffs who
> face retaliation after filing one EEOC
> charge will likely be reluctant to file
> additional charges for fear of further

18

> reprisal.  *See Jones*, 551 F.3d at 302.  Yet
> if a plaintiff faces retaliation and *then*
> chooses to file an EEOC complaint, there is
> little reason not to require her to exhaust
> her retaliation claim by including it in her
> EEOC charge.  Therefore, the normal rules of
> exhaustion must apply to claims of
> retaliation that predate the filing of an
> EEOC charge.

*Cherry*, 2010 WL 917421, at *7 (emphasis in original).

Based on this exception to the general rule, Defendant argues that because Plaintiff could have raised her retaliation claim in her October 12, 2005, formal EEO complaint, but did not, she failed to exhaust her administrative remedies.  One problem with this argument is that Plaintiff's suspension had not yet been finalized as of October 12, and she attached to her complaint a letter dated September 5, 2005, addressed to her EEO counselor, stating that "[o]n August 8, 2005, Ms. Anderson issued me a proposed suspension letter for a period of 30 days without pay."  (ROI, Ex. 1 at 4-5).  When the suspension did become final, moreover, her supplemental EEO filing alleging retaliation by Mr. Chott clearly would have fulfilled the exhaustion requirement had it not been subsequently withdrawn.  Thus, it is clear that Plaintiff at least made a good faith attempt to raise her retaliation claim before the EEO.  *See Wade v. Secretary of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986) ("[g]ood faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available

information is all that exhaustion requires"). A second problem with Defendant's argument is that it fails to address the effect of the MSPB's acceptance of Plaintiff's "mixed case appeal," which under the somewhat unique procedural history of this case, essentially rendered the prior EEO complaint a nullity.

Federal employees aggrieved by adverse employment actions based on alleged discriminatory conduct are provided a choice of avenues for pursuing their claims: either by filing a "mixed case complaint" with the EEOC or a "mixed case appeal" with the MSPB. The MSPB is "an independent, quasi-judicial federal administrative agency established to review civil service decisions." *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995) (citing 5 U.S.C. § 7701). "A mixed case appeal is an appeal filed with the MSPB that alleges an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age, or genetic information." 29 C.F.R. § 1614.302(a)(2). This is distinguished from a "mixed case complaint," which is "a complaint of employment discrimination filed with a federal agency . . . related to or stemming from an action that can be appealed to the [MSPB]." 29 C.F.R. § 1614.302(a)(1). Where, as here, a mixed case is presented, "[a]n aggrieved person may initially file a mixed case complaint with an agency . . . or an appeal on the same matter with the

MSPB pursuant to 5 C.F.R. 1201.15, but not both." 29 C.F.R. § 1614.302(b). Where an employee attempts to pursue both avenues, "[w]hichever is filed first is then considered the employee's election [*see* 29 C.F.R. § 1614.302(b)], and once chosen, the employee must exhaust [her] remedies in that forum." *Devaughn v. U.S. Postal Service*, 293 Fed.Appx. 276, 280 (5th Cir. 2008) (unpublished) (citing *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990)).

As the Eighth Circuit explained in *McAdams*:

> Congress has identified specific circumstances under which a federal employee pursuing a mixed case can seek judicial review of an administrative decision or initiate a civil action based on the issues raised in the administrative proceeding. 5 U.S.C. § 7702. Employees pursuing relief though an EEO mixed case complaint may file a civil discrimination action in federal district court within 30 days of a final decision by the agency or after 120 days have passed without a decision, but only if no appeal to the MSPB is pursued at that time. 5 U.S.C. § 7702(e)(1)(A); 29 C.F.R. § 1613.421(g). A civil discrimination action may be filed within 30 days of a final decision by the MSPB if the employee has not petitioned for EEOC review of the decision or after 120 days have passed without a final decision. 5 U.S.C. §§ 7702(e)(1)(B), 7703(2).

*McAdams*, 64 F.3d at 1142; *see also Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009) (citing *McAdams* with approval).

When Plaintiff filed her supplemental complaint with the Agency's EEO office on October 24, 2005, she technically

committed to pursue all of her claims as a "mixed case complaint" before the EEOC. Even assuming that she properly withdrew her EEO claims and raised them before the MSPB, however, she was clearly required to raise them all in one place.[3]  In other words, her election to proceed before the MSPB as a "mixed case appeal," rather than before the EEO as a "mixed case complaint," was binding and defined the scope of the claims she could raise in this court.  *See* 29 C.F.R. § 1614.302(b); *see also Stoll v. Principi*, 449 F.3d 263, 266-67 (1st Cir. 2006) ("once a government employee elects to pursue a mixed case before the Board, she is obliged to follow that route through to completion, to the exclusion of any other remedy that originally might have been available") (citing *Economou v. Caldera*, 286 F.3d 144, 150 (2nd Cir. 2002)); *Devaughn*, 293 Fed.Appx. at 281 ("[b]ecause Devaughn appealed his mixed case to the MSPB before filing his formal EEO complaint, he irrevocably elected the MSPB route and was required to exhaust his remedies there") (unpublished); *Burkhart v. Potter*, 166 Fed.Appx. 650, 652 n.4 (3rd Cir. 2006) ("the EEO office must dismiss a complaint where the discrimination claims have been raised in an appeal to the MSPB and 'the complainant has elected to pursue the non-EEO process'") (quoting 29 C.F.R. § 1614.107(a)(4)) (unpublished).

---

[3] Defendant does not argue in this court that Plaintiff's filing with the EEO office could not be withdrawn.

Insofar as the same exhaustion requirements applying to EEO claims have also been held to apply to claims pursued through the MSPB, *see Asnari v. Vilsack*, No. RWT 09cv269, 2009 WL 4014922, *2 (D.Md. Nov. 17, 2009) (citing *Williams v. Garrett*, No. HAR 91-106, 1991 WL 263561, at *3 (D.Md. Dec. 2, 1991)), Plaintiff's failure to raise her retaliation claim on the face of her MSPB appeal papers would appear to render this claim unexhausted. Under the formulations adopted by many of the courts considering similar issues, moreover, her failure to present any evidence in support of her conclusory allegation of retaliation would similarly preclude her from asserting that claim in this court. *See Burgett v. U.S. Dept. of Treasury*, 603 F.Supp.2d 1152, 1156 (N.D.Ill. 2009) ("[c]hecking a box on a MSPB form complaint without testifying about or presenting evidence that her termination was due to race or gender discrimination" was insufficient to exhaust administrative remedies) (citing *Chaney v. Rubin*, 986 F.Supp. 516, 522 (N.D.Ill. 1997)); *see also Watson v. Potter*, No. 03-C-4023, 2007 WL 6872907, *3-4 (N.D.Ill. 2007) (where employee presented no "evidence sufficient for establishing an independent grounds for a Title VII action," he failed to exhaust administrative remedies). Nevertheless, to the extent that Plaintiff's January 6, 2006, letter to the ALJ, which references her EEO complaint and alleges retaliation, could be considered an attempt to

import the claims she raised previously before the EEO, thereby exhausting her administrative remedies before the MSPB, the court will consider the merits of her retaliation claim out of an abundance of caution.

In order to survive summary judgment on this claim, Plaintiff must establish a *prima facie* case of retaliation by offering evidence from which a reasonable jury could find that (1) she engaged in a protected activity, (2) her employer took adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. *See Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 754 (4th Cir.), *cert. denied*, 519 U.S. 818 (1996). Once Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to offer legitimate, non-discriminatory reasons for the adverse action, *see Williams v. Cyberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989), after which the burden shifts back to Plaintiff to present evidence that Defendant's proffered reason was pretext for intentional discrimination, *see Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002).

Plaintiff asserts that she participated in the following activities protected by Title VII: (1) by agreeing, in September 2004, with Mr. Snyder's assessment that Ms. Anderson had improperly commented about an Asian-American job candidate following an interview; (2) by participating in Mr. Snyder's EEO

case in February 2005; (3) by contacting an EEO representative on or about May 10, 2005; (4) by participating in an informal EEO complaint process beginning in August 2005; (5) by filing a formal EEO complaint on October 13, 2005; and (6) by filing a mixed case appeal with the MSPB on November 7, 2005.  (Paper 54, at 48-49).  Most, if not all, of these activities are protected by Title VII; thus, Plaintiff has established the first element of the *prima facie* analysis.  She has also established the second element, as her thirty day suspension clearly constitutes an adverse employment action.  With regard to the third element, however, Plaintiff's retaliation claim falters, at least in part.

The adverse action attributed to Ms. Anderson – *i.e.*, the August 8, 2005, suspension proposal – predates at least the filing of Plaintiff's formal EEO complaint and MSPB appeal; thus, those activities could not form the basis of her retaliation claim.  With regard to her participation in the May 10 and August 2005 informal EEO process, moreover, Plaintiff has failed to demonstrate that Ms. Anderson had knowledge of these activities such that they could form the predicate for her claim.  "[A]n employer cannot take action because of a factor of which it is unaware," thus "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie

case." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Because Plaintiff has not demonstrated that Ms. Anderson was aware of her participation in the informal EEO process in May and August 2005 — nor has she established that the August activity occurred before August 8 — she cannot establish a causal connection between that activity and the proposed suspension.[4] Assuming that Plaintiff's agreement with Mr. Snyder as to the inappropriate nature of Ms. Anderson's comment regarding the Asian-American job candidate constitutes protected conduct under the opposition clause of Title VII, that activity and Plaintiff's participation in Mr. Snyder's EEO investigation could conceivably form the basis of

---

[4] Plaintiff argues that because Defendant does not contend that Ms. Anderson and Mr. Chott did not have knowledge of her protected activity, he "thereby concedes" that they did, and further states that "[a]s such, Plaintiff will not address that point in depth." (Paper 59, at 50). It is Plaintiff's burden, however, to demonstrate a *prima facie* case. Indeed, Defendant is not required to proffer a legitimate, nondiscriminatory reason for the adverse action until a *prima facie* showing has been made.

It should be noted, moreover, that Plaintiff does appear to assert that Ms. Anderson was aware of the informal EEO investigation in or around June 2005. As support for this claim, however, Plaintiff cites a handwritten note scrawled across a typed "journal entry," indicating that her EEO counselor approached Ms. Anderson, who "refused to settle my complaint issues of harassment." (Paper 59, Ex. 28 at 2). This unsworn, unauthenticated note is not competent evidence. *See* Fed.R.Civ.P. 56(e)(2). Moreover, its content makes clear that it was written, apparently by Plaintiff, after the suspension had been proposed. Thus, it does not support a claim that Ms. Anderson was aware of the protected activity before the date she proposed Plaintiff's suspension.

her retaliation claim.   Indeed, the thrust of her retaliation claim, as supported by her deposition testimony, is that her relationship with Ms. Anderson became increasingly strained immediately following the employment interview panel incident in September 2004, culminating in her proposed suspension in August 2005.  (Paper 59, at 53 ("Plaintiff's rebuke of Ms. Anderson for making that remark [about the Asian-American candidate] is the pivotal moment when Plaintiff's and Ms. Anderson's relationship began to disintegrate").   Thus, Plaintiff arguably has made out a *prima facie* case of retaliation, as to Ms. Anderson, with respect to these two discrete activities.

The same cannot be said, however, with regard to her retaliation claim against Mr. Chott.  It is undisputed that Mr. Chott was based in Washington, D.C., not in Maryland FSA's office in Columbia, Maryland, and that he was not involved in the day-to-day activities at that office.  More importantly, Plaintiff has not set forth any facts, nor pointed to any evidence, indicating that he was aware of any of the protected activity that predated his approval of Plaintiff's suspension. To the contrary, she asserts in her opposition papers:

> Mr. Chott's affirmation of the proposed suspension was admittedly based on the one-sided and arguably tainted evidence prepared by Ms. Anderson.  Exhibit 17, John Chott Deposition at 92.  Mr. Chott admitted that he affirmed the proposed suspension based solely upon the representations of Mr. Long

and Ms. Anderson and the evidence presented
by Ms. Anderson. *Id*. at 93, 151.  Mr. Chott
also testified that he did not have any
interaction with Plaintiff prior to the
proposed suspension.  *Id*. at 92, 93.  At the
very least, Mr. Chott's affirmation of the
proposed suspension was simply a rubber
stamp of Ms. Anderson's intent to retaliate
against Plaintiff.

(Paper 59, at 51).  Assuming the truth of these allegations,
they fail to demonstrate that Mr. Chott's approval of
Plaintiff's suspension was in any way related to prior protected
activity.  In fact, they constitute persuasive argument as to
why her retaliation claim against Mr. Chott cannot prevail.
Because Plaintiff has failed to demonstrate a causal connection
between a protected activity and the decision to suspend her,
she cannot make out a *prima facie* case as to Mr. Chott.

When reviewing a defendant's proffered reason for an
adverse employment action and a plaintiff's corresponding claim
of pretext, the court must "keep in mind that Title VII is not a
vehicle for substituting the judgment of a court for that of the
employer."  *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99
(4th Cir. 1998) (internal quotation marks omitted) (quoting
*Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir.
1995)).  The court "does not sit as a kind of super-personnel
department weighing the prudence of employment decisions."
*DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted)
(quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109

28

F.3d 406, 410 (7th Cir. 1997)).   Where a defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, it is not the role of the court "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason." *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted) (quoting *Giannopoulos*, 109 F.3d at 410-11).

While Defendant has not specifically addressed the relevant analysis beyond the *prima facie* showing, he sets forth legitimate, non-discriminatory reasons for suspending Plaintiff in analyzing her racial discrimination claim, and these reasons apply with equal force in the retaliation context.   Because that showing has been made and amply supported, the burden shifts to Plaintiff to demonstrate that those reasons were pretext for unlawful retaliation.   To establish pretext, Plaintiff appears to argue (1) that she was "never counseled on any performance or conduct related issue prior to her EEO activity and had positive performance ratings and remarks"; (2) that she was not "provided notice of any performance or conduct related issue that was used in the reasoning/specifications for the suspension"; (3) that her "good relationship with Ms. Anderson . . . changed only after Plaintiff participated in the protected EEO activity"; and (4) that "Ms. Anderson did not provide Plaintiff with all the Interrogatories for Sam Snyder's EEO complaint . . . per the

request of the EEO Investigator, Ms. Griffith." (Paper 59, at 50-51). These arguments, however, fail to address the specific allegations set forth in the in the suspension proposal drafted by Ms. Anderson. (ROI, Ex. 2 at 12-14). Moreover, they are, in many instances, belied by the record. Plaintiff herself acknowledged that she was counseled on multiple occasions related to conduct issues, and the record is replete with evidence that she was made aware of performance related issues long before her suspension was proposed. While it is likely true, as Plaintiff asserts, that her relationship with Ms. Anderson deteriorated following their conflicts at the September 2004 interview panel, there is little suggesting that Ms. Anderson proposed to suspend Plaintiff approximately eleven months later related those incidents. Similarly, even assuming, as Plaintiff alleges, that Ms. Anderson deliberately withheld an interrogatory in the Snyder EEO investigation asking Plaintiff to provide testimony with regard to the comment she made about the Asian-American job applicant, she points to no evidence suggesting that such misconduct was related to the proposed suspension. Thus, Plaintiff has failed to establish that the legitimate, non-discriminatory reasons for the adverse employment action proffered by Defendant are pretext for discrimination. Accordingly, her retaliation claim must fail.

## 2.   Racial Discrimination

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Here, Plaintiff has produced no direct evidence of discrimination; therefore, she must proceed under the *McDonnell Douglas* framework. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to present legitimate, nondiscriminatory reasons for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, the presumption of discrimination raised by the plaintiff's *prima facie* case is established. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, however, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Here, Plaintiff alleges racial discrimination under a disparate treatment theory. To prove her claim, she must demonstrate that (1) she is a member of a protected class, (2) the prohibited conduct in which she was engaged was comparable in seriousness to the misconduct of employees outside her protected class, and (3) the disciplinary measures enforced against her were more severe than those enforced against the other employees outside her class. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (citing *Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.), *cert. denied*, 472 U.S. 1021 (1985)).

Plaintiff is clearly a member of a protected class, and she cites examples of Caucasian employees outside that class who she claims were disciplined less severely than she was for similar conduct. Specifically, Plaintiff alleges that Linda Slacum, a Caucasian female employee, committed approximately $11,700 of Agency funds to secure a contract for wiring at a county office

without first obtaining authorization.   (Paper 59, Ex. 16 at 120-21).   According to Plaintiff, despite requests from the national office that she be disciplined, she was not.   (Paper 59, Ex. 17 at 256, Ex. 20 at 14).   Similarly, when Mr. Long and Mr. Young, both white men, were discovered by Plaintiff to have manipulated the scores of candidates during the employment interview panel, their notes – which Plaintiff asserts constituted evidence of tampering – were not collected and they were merely given letters of counseling.   (Paper 59, Ex. 16, at 60; Ex. 39, at 194-95, 199).[5]   Plaintiff further contends that another white male employee, George Turner, authorized a sizeable loan a farmer in exchange for receiving a portion of the farmer's land for a conservation easement against a directive of the national office.   (Paper 59, Ex. 16 at 101; Ex. 19 at 60; Ex. 26 at 31).   Plaintiff asserts that despite the impropriety of his action, Mr. Turner was never disciplined for his failure to follow instructions.

---

[5] Plaintiff additionally claims that Mr. Long was never disciplined for his alleged harassment of her, for failing to complete performance reviews for two employees, and for filing a lease agreement form past a deadline.   (Paper 59, at 35).   She cites only her amended complaint and her report to the EEO investigator as support.   A party opposing summary judgment "may not rely merely on allegations or denial in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."   Fed.R.Civ.P. 56(e)(2).   Thus, these allegations are not properly supported.

By comparison, the suspension proposed by Ms. Anderson, later approved by Mr. Chott, claimed that Plaintiff was "negligent in the performance of [her] duties" and "fail[ed] to follow supervisory instructions," citing eight specific examples. (ROI, Ex. 2 at 12-13). The first negligence specification alleged that on or about February 1, 2005, Diane Drabish, a Farm Loan Officer Trainee, requested Plaintiff's assistance with a relocation entitlement, but due to Plaintiff's failure to respond, she "missed out" on three locations that would have been acceptable to her. (*Id.*; Paper 54, Ex. 24 at Att. 3). Moreover, Plaintiff subsequently assured Ms. Drabish that her relocation paperwork would be processed by June 1, 2005, but the job still had not been completed by the end of that month. In May or June of 2005, an inquiry was made of Plaintiff for a promotion and within-grade increase eligibility date for Ms. Drabish. Plaintiff indicated on the requisite form that the promotion would be processed by an outside office and that the effective date would be June 26, 2005. On July 15, 2005, however, Ms. Anderson learned that Ms. Drabish received an increase on June 26 to which she was not entitled, and Plaintiff failed to ensure that the data was corrected in the payroll system. Furthermore, on or about May 20, 2005, Ms. Anderson learned that Plaintiff had neglected to bill "Rural Development" and the "Natural Resource & Conservation Service" for postage or

phone usage for approximately two years, resulting in an amount due to Maryland FSA in excess of $80,000.  Also in May 2005, Alison Lenz, an employee, approached Plaintiff regarding relocation expenses for a move that was to take place on August 1, 2005, but Plaintiff provided "bad advice" during a subsequent meeting with her, which necessitated the back-dating of certain time sensitive forms to ensure that Ms. Lenz would receive her relocation expenses.  In July 2005, Ms. Anderson learned that Plaintiff had failed to bill various county offices in a timely manner.  Finally, on July 18, 2005, Ms. Anderson inquired regarding the status of furnishings for a county office that she had ordered and learned that Plaintiff neglected to inform her that her authorization was needed on a form that had been sitting on Plaintiff's desk.  (*Id.*).

Two specifications were cited related to Plaintiff's failure to follow her supervisor's instructions.  In an email dated June 8, 2005, and another dated June 13, Ms. Anderson requested Plaintiff to retrieve certain postage reports, and Plaintiff responded that her assistant, Ms. Prince, would pull the reports when she returned from sick leave, but did not do it herself, as Ms. Anderson had requested.  On May 25, 2005, Plaintiff prepared a memorandum entitled "authorization hire" for a county office and signed Ms. Anderson's name, despite the

fact that she had been instructed not to authorize that hiring and did not have permission to sign Ms. Anderson's name. (*Id.*).

Defendant contends that Plaintiff's conduct was not comparable to the misconduct of those employees cited by Plaintiff. The court, therefore, examines each comparator. Under the familiar standard, the court compares:

> discipline for comparable offenses, instead of strictly identical offenses, "reflect[ing] an understanding both of the need to compare only discipline imposed for like offenses in sorting out claims of disparate discipline under Title VII and of the reality that the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook*, 988 F.2d at 511. Accordingly, "this mandate sets for lower federal courts the difficult, but not unfamiliar, task of assessing the gravity of offenses on a relative scale." *Moore*, 754 F.2d at 1107.

*Manning v. Foodarama, Inc.*, 195 F.Supp.2d 741, 744 (D.Md. 2002). Courts have also noted that, in the Title VII context, "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees." *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 206-07 (4th Cir. 1993)).

In terms of the sheer volume of complaints and persistence of these incidents, none of the other employees cited by Plaintiff is sufficiently comparable. Ms. Slacum was not even a federal employee, thus neither Ms. Anderson nor Mr. Chott had disciplinary authority over her. (Paper 54, Ex. 7 at 45; Ex. 3 at 28; Ex. 25 at AFS-7). Moreover, she was accused of only one incident of misconduct, which resulted in no loss to the government, as the contract in which she entered was subsequently ratified. (Paper 54, Ex. 7 at 46; Ex. 26 at *13). Likewise, the only competent evidence Plaintiff presents as to Mr. Long and Mr. Young relates to one instance in which they improperly compared scores during the employment interview panel, for which they were appropriately disciplined by Ms. Anderson upon Plaintiff's recommendation. As to Mr. Turner, the record reflects that he acted under the direction of his superiors in authorizing a "debt for nature contract," which was "not a 'loan' but rather was a decrease in the total debt owed to the agency by the borrower." (Paper 54, Ex. 25 at AFS-15). Moreover, he was not the only employee involved in the alleged misconduct – the other was Annette Cottman, an African-American female – and both Mr. Turner and Ms. Cottman received minor disciplinary action – namely, verbal counseling. (*Id*. at AFS-9, AFS-16). Thus, with regard to that incident, Ms. Anderson treated Caucasian and African-American employees equally.

Plaintiff, by contrast, was a full-time federal employee and had a leadership role in the Maryland FSA office, yet her response to the charges in the proposed suspension was to deflect responsibility onto others, a factor that was considered by Mr. Chott in approving her suspension. (Paper 54, Ex. 12 at 212). Notably, she was cited for eight specific instances of misconduct, including some incidents that resulted in financial loss to the Agency and others that significantly inconvenienced coworkers. (Paper 54, Ex. 25 at AFS-12). Moreover, much of this conduct occurred after Plaintiff was counseled by Ms. Anderson on separate occasions in May 2005. (ROI, Ex. 2 at 10; Ex. 20 at MSPB-78). Plaintiff does not allege that the comparative Caucasian employees engaged in the manner or volume of conduct that led to her suspension. Accordingly, she cannot make out a *prima facie* case of discriminatory discipline.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge